**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-21-HAB |
| | ) | |
| BRANDON BUCHANAN | ) | |

**OPINION AND ORDER**

Defendant was part of an armed drug distribution organization with the charming moniker "Thrust Godz." His participation in the gang earned him a place in a four-count indictment, to which he pleaded guilty to two: maintaining a residence for the purpose of distributing controlled substances and being a felon in possession of a firearm in furtherance of a drug trafficking crime. But Defendant now believes that guilty plea was based on some bum advice from his attorney and so he has filed a § 2255 motion seeking to overturn his plea and sentence. (ECF No. 133). Because that motion is based, in large part, on a failure to understand the distinction between statutory maximums and minimums, and is otherwise meritless, the motion will be denied without hearing.

**I.     Factual and Procedural Background**

In 2017, the ATF began investigating the Thrust Godz for distributing drugs from, first, Fort Wayne hotels and then, two Fort Wayne residences. A confidential informant ("CI") was used to perform controlled buys from the gang members, including Defendant.

Over the course of roughly four months, the CI made two controlled purchases of methamphetamine and fentanyl where Defendant was present. During those purchases, the CI noticed a .357 caliber handgun belonging to Defendant and his co-Defendant, Varnell Coe ("Coe"). On both occasions, the CI observed Defendant or Coe weigh drugs next to a handgun.

Officers served a search warrant on one of the Fort Wayne residences, located on South Anthony Boulevard, in March 2018. Defendant was in the residence when the warrant was served. Defendant fled to a bathroom where an officer outside the home saw Defendant with a firearm through an open window. Defendant was eventually detained in the living room and, nearby, officers found a .357 caliber Smith and Wesson revolver. Officers also located 10.4 grams of fentanyl outside the bathroom and two digital scales on the dining room table.

The search of a bedroom identified by the CI as belonging to Defendant turned up more evidence of drug trafficking. Officers found two safes, the first containing 22.9 grams of crack cocaine and an empty handgun magazine, and the second containing .357 ammunition, ammunition of other calibers, and magazines. A shoebox with about $1,000.00 cash was found in the closet.

A woman present at the home during the search confirmed that Defendant and Coe had been dealing drugs out of the residence. She identified the revolver as the "house gun" shared by Defendant and Coe.

Defendant entered his guilty plea in March 2019. As part of that plea, Defendant agreed to the following:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

At his guilty plea hearing, Defendant agreed with the above facts except that he did not think it was possible that officers saw him running to the bathroom with a gun and then found a gun in the living room. He confirmed to the Court that he was using the home to sell drugs and that he had a gun to further his drug sales. Defendant was sentenced to 117 months' imprisonment and two years of supervised release; 57 months on Count 1 and a consecutive 60 months on Count 4.

Defendant did not file a direct appeal. He did file two motions for compassionate release which were denied. Defendant then filed this motion in May 2022, well-beyond the one-year deadline. But the Court found, reluctantly, that a prior filing was lost on its way to the clerk's office. Applying the prison mailbox rule, the Court determined that the § 2255 motion was timely. (ECF No. 131).

## II.    Legal Discussion

As the Government correctly notes, Defendant waived his right to challenge his conviction or sentence, whether by appeal or § 2255 motion, as part of his plea. So the only way for the Court to reach the merits of Defendant's claims is to find that he received ineffective assistance of counsel during the plea stage of his criminal proceedings. The Court does not so find.

A § 2255 motion must be granted when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. But a § 2255 motion does not replace direct appeal. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Claims not raised on direct appeal are barred from collateral review unless upon review the petitioner establishes that a failure to consider the issue would amount to a fundamental miscarriage of justice. *See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Ineffective assistance of counsel claims will generally fit into this mold; they generally are not appropriate for review on

3

direct appeal as they often attempt to rely on evidence outside the record. *See United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992). Nonetheless, "[r]egardless of when it is made, because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

To make out a successful ineffective assistance of counsel claim, the petitioner must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*Trevino*, 60 F.3d at 338. Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. So many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir.1991) (citations and quotations omitted).

4

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Further,

> [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id*. at 695-96.

Defendant's traverse brief[1] concedes that his initial habeas filings were somewhat difficult to follow. Now represented by a different jailhouse lawyer—who's not an actual lawyer, mind you—Defendant now clarifies that his primary basis for relief is that his trial counsel, Marcia Linsky, erroneously told him that he faced up to life in prison if convicted at trial. Defendant writes:

> Here, Petitioner contend that his original grounds for relief, as acknowledged by the Govt, avering that guilty plea was not voluntary and intelligent when entered before the court where it was entirely the product of erroneous and misleading/inaccurate advice of counsel, which ultimately worked to induce the

---

[1] It's not clear to the Court why Defendant filed a "traverse brief" instead of a reply. The only reference to a traverse brief that the Court can find online is a 2009 article on the Prison Legal News website titled, "Habeas Hints: Traverse Motion Responses." *See* https://www.prisonlegalnews.org/news/2009/jul/15/habeas-hints-traverse-motion-responses/. In that article, the author claims that "the local rules of almost every district court use the phrase "Traverse." *Id*. Leaving aside the fact that one word does not a phrase make, the local rules of *this* district court call Defendant's filing a reply. *See* N.D. Ind. L. Cr. R. 47-2.

plea agreement when counsel informed that Petitioner faced life imprisonment—whether as a minimum term or "statutory maximum" term of exposure—for <u>Count 4</u> charging Possession of A Firearm during a Drug Trafficking Crime, in violation of none other than 18 U.S.C. § 924(c), with no other aggravating statutory subsections charged nor pleaded to.

(ECF No. 136-1 at 3) (all sic) (original emphasis).

Unfortunately, what Defendant shows in terms of rhetorical flair is not matched by simple comprehension. He asserts that, for a conviction under 18 U.S.C. § 924(c), "the maximum exposure is a mere five years." (*Id*.). He even claims that the Court could have exercised its discretion to impose "as little as <u>one day</u>" on that count. (*Id.*) (original emphasis). This is all wrong.

What § 924(c) states is that, on top of the sentence for the drug trafficking crime, a person convicted under the section shall "be sentenced to a term of imprisonment of ***not less than*** 5 years." 18 U.S.C. § 924(c)(1)(A)(i) (emphasis added). Five years was not Defendant's maximum exposure; it was his minimum exposure. *See*, *e.g.*, *Alleyne v. United States*, 570 U.S. 99, 103-04 (2013) (referring to sentences under 18 U.S.C. § 924(c) as "mandatory minimum sentence[s]."). "Minimum" means "the least quantity or amount possible, assignable, allowable, or the like." https://www.dictionary.com/browse/minimum. Stated another way, § 924(c)(1)(A)(i) permits a sentence in the range of five years at the low end to life at the high end. Attorney Linsky's advice, then, was correct.

Defendant's argument appears to flow from his misreading of cases discussing the interplay between the sentence mandated under § 924(c) and the sentence for the drug trafficking crime. For instance, Defendant cites *United States v. Campbell*, 717 Fed. App'x. 639 (7th Cir. 2018). He points to an excerpt that teaches "sentencing courts [can] consider the minimum sentence under section 924(c) when choosing a sentence for the predicate offense and to impose a sentence as short as one day on the predicate count." *Id*. at 640 (citing *Dean v. United States*, 581

U.S. 62 (2017)). The "predicate count" is not the § 924(c) count, but the count that makes the defendant eligible for a § 924(c) charge: Hobbs Act robbery in *Campbell*, Maintaining a Drug-Involved Premises here. 18 U.S.C. § 924(c)(2); 21 U.S.C. § 856. *Campbell*, then, means only that the Court, considering that it must sentence a defendant to *at least* five consecutive years for the gun charge, can select a nominal sentence on the predicate offense. It does not, and cannot, undermine the express direction of Congress in establishing a mandatory minimum sentence.

Defendant appears to come around to this inevitable conclusion in his final paragraph. There, he writes that the prejudice caused by Attorney Linsky's advice to plead was "compounded by the fact that, had Petitioner proceeded to trial as originally intended, absent counsel's ill advice He'd face a mandatory minimum sentence of five years on Count 4, with the possibility of a mere 'day' sentence on Count 1, if jury returned a guilty verdict." (ECF No. 136-1 at 5) (all sic) (original emphasis). But this discussion of "possibility" ignores reality. Remember, after receiving a three-level reduction of his offense level under USSG § 3E1.1, a reduction he would not likely have received had he gone to trial, Defendant was sentenced to 57 months' imprisonment on Count 1. It is simply unreasonable to believe that the same judge that handed down a nearly five-year sentence after a plea would have handed down a one-day sentence after trial. Attorney Linsky's plea advice was not only Constitutionally permissible but correct.

Sentencing issues aside, Defendant argues that the plea advice was deficient because he was likely to have been acquitted. This innocence argument seems to be based on a claim that he did not "possess" the subject firearm. (ECF No. 136-1 at 5). But as the Government points out, that ship has sailed. Defendant admitted at his plea hearing that he "had a gun to further the drug sales" of his operation. (Tr. Plea at 27). Defendant wants to disavow this admission, but the Court "need not let litigants contradict themselves so readily; a motion that can succeed only if the

defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). Defendant gives no explanation for his post-plea about-face. Without such an explanation, the Court chooses to credit his under-oath statements during the plea hearing.

Defendant has demonstrated no ineffective assistance of counsel by Attorney Linsky during the plea stage of his case. His plea, including the appeal and § 2255 waiver, is binding. This motion, then, must be denied.

## III.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*,

8

529 U.S. at 484. Because the Court finds that no reasonable jurist could conclude that he is entitled to relief, no certificate of appealability will be issued.

**IV.     Conclusion**

For these reasons, Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 133) is DENIED. No certificate of appealability is issued.

SO ORDERED on September 7, 2022.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT